# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ELOHIM EL-JONES, | ) | CASE NO. 5:14cv2669 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG |
| | ) | WHITE |
| ALAN LAZAROFF, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

Petitioner, Elohim El-Jones ("El-Jones"), challenges the constitutionality of his

convictions and sentences in the case of *State v. El-Jones*, Summit County Court of Common

Pleas Case No. CR-2011-01-0136.  El-Jones, represented by counsel, filed a Petition for a Writ

of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on December 5, 2014.  On January

28, 2015, Warden Alan Lazaroff ("Respondent") filed his Return of Writ.  (ECF No. 4.)  On

April 9, 2015, El-Jones filed a Traverse.[1]  (ECF No. 9.)  For reasons set forth in detail below, it is

recommended that El-Jones' Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

---

[1]  On the same date, the electronic docket reflects a filing from El-Jones designated as a
"Reply to response to motion ...." (ECF No. 8), which appears to be identical to the
Traverse.  (ECF No. 9.)

of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v.*

*Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts

underlying El-Jones' convictions as follows:

> {¶ 2} A fight between Mr. El Jones and Michael Kirksey, the victim in this case,
> broke out at Chapel Hill Mall on the night of August 15, 2009. At some point
> during the altercation, Mr. El Jones' pregnant girlfriend, Jazmine Lee, had bleach
> thrown into her face. Monica Jones, another mall patron, came to Lee's aid when
> she saw that Lee was injured. Lee then went to the hospital with a friend, Unique
> Brown. The following night, Mr. El Jones, Lee, and Brown drove to a section of
> low-income housing in Akron known as The Rosemary. Lee and Brown stayed
> with the car while Mr. El Jones walked off on his own. At some point, Monica
> Jones, the woman who had helped Lee at the mall the previous night, approached
> the car. Jones lived in an apartment at The Rosemary and recognized Lee from the
> mall. Mr. El Jones later came back to the car and told Lee and Brown to leave
> without him.
>
> {¶ 3} The same night that Mr. El Jones and his female companions drove to The
> Rosemary, Kirksey was watching a football game at his aunt's apartment, located
> within The Rosemary. It was dusk outside when a female neighbor and family
> friend, Jennette Bland, entered the apartment and walked to the bathroom,
> indicating that she was in need of a tissue. Bland spoke to someone on her cell
> phone as she left the bathroom and ran out the front door, passing Kirksey who
> was sitting in a chair nearest the window. As Bland ran out the front door,
> Kirksey's aunt, Nerieda Riley, observed a black man standing just outside the
> window of her ground-level apartment. She then heard a series of pops and
> realized that someone was shooting into the apartment. During the incident, Riley
> sustained a gunshot wound to her leg. Kirksey sustained four gunshot wounds,
> one of which was fatal. Before he died, Kirksey repeatedly said "Prophet."
> Numerous individuals identified "Prophet" as being the alias of Mr. El Jones.
>
> {¶ 4} After the shooting Mr. El Jones told several people that he had been shot in
> the stomach and that he needed a ride to the hospital. Teaira Laramore, the
> daughter of Monica Jones, offered to drive Mr. El Jones to the hospital. Another
> neighbor, Durell Bradley, drove behind Laramore's car, but the car drove past the
> highway exit for the hospitals and continued onto Tallmadge Avenue. After
> exiting at Tallmadge Avenue, Laramore drove to some apartments on Colonial
> Hills Drive, a place where Mr. El Jones had family connections. Bradley spoke
> with Mr. El Jones as he exited Laramore's car because she was concerned that he

was injured. Mr. El Jones, however, assured Bradley that he was not injured and showed her his stomach before running away. He had not been shot. The police quickly identified Mr. El Jones as a suspect in the murder of Kirksey, and an arrest warrant for Mr. El Jones issued within the next few days. Despite an extensive manhunt, the police did not apprehend Mr. El Jones until early 2011.

*State v. El-Jones*, No. 26136, 2012 WL 3985969 at *1 (Ohio Ct. App. Sept. 12, 2012).

## II. Procedural History

### A.    Conviction

On January 26, 2011, a Summit County Grand Jury charged El-Jones with the following counts: (1) aggravated murder, in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A); (2) murder, in violation of O.R.C. § 2903.02(B); (3) two counts of felonious assault, in violation of O.R.C. §§ 2903.11(A)(1)/(A)(2); (4) having weapons while under disability, in violation of O.R.C. §§ 2923.13(A)(2)/(A)(3); and, (5) participating in a criminal gang, in violation of O.R.C. § 2923.42(A). With the exception of the weapons under disability and criminal gang charges, each count also contained a firearm specification in violation of Ohio Rev. Code § 2941.145. (ECF No. 4-3.) Before trial, the State dismissed without prejudice the charge of participating in a criminal gang. (ECF No. 4-14.)

On September 2, 2011, a jury found El-Jones guilty as charged. (ECF No. 4-14.) On September 14, 2011, the trial court sentenced El-Jones to a total of thirty-three years to life in prison. *Id*. For purposes of sentencing, the murder charge and one of the felonious assault charges were merged with the aggravated murder charge. *Id*. The firearm specifications were also merged. *Id*. El-Jones's sentences included a term of life with parole eligibility after twenty-five (25) years for the aggravated murder charge; a term of five years incarceration for the felonious assault charge; a term of five years for having weapons while under disability; and, a

-3-

mandatory term of three years for the firearm specification. *Id*. The aggravated murder charge was to be served consecutively with the felonious assault charge and the firearm specification, but the weapons while under a disability charge was to be served concurrently. *Id*. at 2.

## B.    Direct Appeal

On October 14, 2011, El-Jones, through counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court"). (ECF No. 4-12.) In his appellate brief, El-Jones raised the following assignments of error:

1.    The trial court committed reversible and plain error in closing the courtroom and not allowing an open public trial in violation of the Defendant's Sixth Amendment rights.

2.    El-Jones was denied his constitutional right to effective assistance of trial counsel when his trial counsel failed to argue that the courtroom should not have been closed as El-Jones was allowed to have an open public trial.

3.    The trial court committed reversible and plain error in not declaring a mistrial due to juror misconduct.

4.    El-Jones was denied his constitutional right to effective assistance of trial counsel when his trial counsel failed to request a mistrial due to juror misconduct.

5.    Defendants' convictions are against the manifest weight of the evidence.

6.    The trial court committed reversible and/or plain error when it overruled Defendant's Crim. R. 29(A) motion for judgment of acquittal because the state presented insufficient evidence to sustain a conviction.

7.    The trial court committed reversible and plain error in assessing court costs against El-Jones without complying with R.C. 2947.23(A).

8.    El-Jones was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that the trial court's imposition of court costs under R.C. 2947.23(A) was defective.

9.    The trial court committed reversible and plain error in assessing attorney

-4-

fees against Defendant without complying with R.C. 2941.51(D), and not doing so in open court.

10. The trial court committed reversible and plain error when it sentenced El-Jones based on information not contained in the record.

11. El-Jones was denied his constitutional right to effective assistance of trial counsel when his trial counsel failed to argue that the trial [court] should not have considered information not contained in the official record when it sentenced El-Jones.

(ECF No. 4-15 at 4.)  The State filed its brief in opposition on April 9, 2012.  (ECF No. 4-16.)

On September 12, 2012, the state appellate court sustained El-Jones's seventh and ninth assignments of error, and remanded to afford him the opportunity to seek a waiver of the payment of court costs and for a determination of his ability to pay his attorney fees.  The court overruled the remaining assignments of error.  *El-Jones*, 2012 WL 3985969, at *14.  A review of the Supreme Court of Ohio's online docket indicates El-Jones did not appeal the state appellate court's judgment.

**C.    Postconviction Relief**

On July 16, 2012, while his direct appeal was pending, El-Jones, through new counsel, filed a "Motion for Post Conviction Relief per Ohio Criminal Rule 35" with the trial court.  (ECF No. 4-18.)  He raised two claims as follows:

1. Elohim El-Jones was denied effective assistance of trial counsel during his trial court proceedings.

2. Mr. Elohim El-Jones was denied his constitutional right to a fair trial and due process of law because witnesses were threatened, coached and coerced to testify in a way that would benefit the State, even though said witnesses had information which would have been beneficial to his

defense.

(ECF No. 4-18 at 5, 7.)  On July 20, 2012, the State moved to dismiss the petition.  (ECF No. 4-20.)  On August 6, 2012, the trial court denied the petition on the merits.  (ECF No. 4-21.)

On August 30, 2012, El-Jones, through counsel, filed a Notice of Appeal with the state appellate court.  (ECF No. 4-23.)   In his brief, he raised one assignment of error:

> I.  The trial court erred in not granting the Appellant's motion for post conviction relief[.]
>
>> A.  Appellant's first ground for relief   Elohim El-Jones was denied effective assistance of trial counsel during his trial court proceedings[.]
>>
>> B.  Appellant's second ground for relief   Mr. Elohim El-Jones was denied his constitutional right to a fair trial and due process of law because witnesses were threatened, coached and coerced to testify in a way that would benefit the State, even though said witnesses had information which would have been beneficial to his defense.

(ECF No. 4-24 at iv.)  The State filed a response on November 7, 2012.  (ECF No. 4-25.)

On July 31, 2013, the state appellate court affirmed the trial court's judgment.  *State v. El-Jones*, 2013 WL 3964346, *4 (Ohio App. 9th Dist. July 31, 2013).  (ECF No. 4-26.)

On September 16, 2013, El-Jones, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio.  (ECF No. 4-29.)  El-Jones raised the following propositions of law:

> 1.  The Appellant was denied effective assistance of trial counsel during his trial court proceedings; wherefore, the trial court erred in denying his motion for post-conviction relief and the Ninth District Court of Appeals erred in denying the Appellant's appeal.
>
> 2.  The Appellant was denied his constitutional right to a fair trial abd due process of law because witnesses were threatened, coached, and coerced to testify in a way that would benefit the State, even though said witnesses had information which would have been beneficial to his defense.

(ECF No. 4-30 at ii.)

Jurisdiction was declined pursuant to S. Ct. Prac. R. 7.08(B)(4) on December 4, 2013.

(ECF No. 4-31.)

**D.     Federal Habeas Petition**

On December 5, 2014, El-Jones, represented by counsel, filed a Petition for Writ of

Habeas Corpus, asserting the following two grounds for relief:

> **GROUND ONE**:     Petitioner was denied effective assistance of counsel during his trial court proceedings in that trial attorney failed to call any and all available alibi witnesses.
>
> *Supporting Facts*:     There were multiple witnesses that were available to testify in Petitioner's trial which could have provided alibi evidence and trial counsel failed to subpoena or call such witnesses.
>
> **GROUND TWO**:     Petitioner was denied his constitutional right for a fair trial and due process of law because witnesses were threatened, coached, and coerced to testify in such a way that would benefit the state, even though said witnesses had information that would have benefited [sic] the petitioner.
>
> *Supporting Facts*:     Witnesses presented by the State Of Ohio were coached, coerced and threatened to testify in such a way that would only benefit the State of Ohio.

(ECF No. 1 at 6, 8.)

### III.  Exhaustion and Procedural Default

**A.     Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas

-7-

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.     Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways.  *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

---

the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless

petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough   a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

**C.    Application to El-Jones: Ground Two – Bland and Lee Prosecutorial-Misconduct Claims**

In his second ground for relief, El-Jones claims that the State deprived him of his due process right to a fair trial by threatening and coercing witnesses.  (ECF No. 1.)  El-Jones raised this claim in his post-conviction proceedings.  (ECF Nos. 4-18 & 4-24.)  As it relates to Jazmine Lee and Jenette Bland, the Respondent contends that this ground for relief is defaulted.[3]  (ECF

---

[3]  Jenette Bland was a State's witness at trial.  (ECF No. 4-7, Tr. 243-305.)  As stated in the state appellate court's recitation of the facts, Jazmine Lee was El-Jones's pregnant girlfriend at the time the events underlying the criminal charges transpired.  The trial court noted on the record that three separate witnesses indicated at trial that they were afraid to testify, leading to the closure of the courtroom proceedings to all but members of the media.  (ECF No. 4-9, Tr. 489-90.)  One of those witnesses was Bland, and the trial judge noted that she was fearful of people in the gallery.  (Tr. 490-91.)  Lee had failed to appear despite a subpoena and her request that the day of her testimony be moved.  (ECF No. 4-10, Tr. 521-22.)  A material witness warrant was issued and police located her at her workplace.  (Tr. 522.)  She ultimately was granted transactional immunity for prior

No. 4 at 37-39.)  Both Bland and Lee testified at trial as State's witnesses.  (ECF No. 4-5 at 2.)

The last court to review the claim, the state appellate court, found these claims, as they related to

Lee and Bland, were barred on the ground of *res judicata* as follows:

> {¶ 12} With respect to Ms. Bland and Ms. Lee, El Jones' alleged error could have
> been fully addressed on direct appeal and is barred by *res judicata*.  "*Res judicata*
> bars the assertion of claims against a valid, final judgment of conviction that have
> been raised or could have been raised on appeal." . . .  The trial court noted that
> both testified at trial about their alleged harassment at the hands of the police and
> prosecutors.  The trial record also demonstrates that both witnesses made prior
> inconsistent statements that were also submitted to the jury for consideration.
> Indeed, the trial record with respect to both witnesses is extensive. In the case of
> Ms. Lee, the trial record contains additional information related to her appearance
> in court and the potential charges that she faced as a result of failing to appear,
> and the record memorializes that she was represented by separate counsel in the
> course of the proceedings.  El Jones could have raised these issues on direct
> appeal based on the trial court record, and they are barred by *res judicata*.

*El-Jones*, 2013 WL 3964346, at *3 (internal citations omitted).

Respondent asserts that, based on this ruling, El-Jones procedurally defaulted his

prosecutorial misconduct claims relating to Bland and Lee.  (ECF No. 4 at 38-39.)  This Court

agrees.  The state court found that El-Jones failed to comply with an applicable state procedural

rule, *res judicata*, that bars issues from being raised in post-conviction proceedings that could

have been raised on direct appeal.  Here, the state court actually enforced its procedural bar, thus

satisfying the first and second prongs of *Maupin*.  Further, as to the third prong of *Maupin*, "the

Sixth Circuit has stated that *res judicata* 'is an actually enforced, adequate and independent state

ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's

---

statements made to police officers that claimed she and El-Jones were at the family
reunion from approximately 10 p.m. until midnight.  (ECF No. 4-10, Tr. 523.)

claims.'"  *Collins v. Warden, Ross Correctional Inst.*, 2013 U.S. Dist. LEXIS 184939, 2014 WL 575727 at * 11 (N.D. Ohio Feb. 11, 2014) (*quoting Powers v. Bobby*, 2008 U.S. Dist. LEXIS 90612, 2008 WL 4823134 (N.D. Ohio Nov. 3, 2008)). *See also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Williams v. Bagley*, 380 F.3d 932, 966-67 (6th Cir. 2004); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001). Accordingly, the Court finds ground two, as it relates to the arguments concerning Ms. Lee and Ms. Bland, are procedurally defaulted and should be dismissed on that basis, unless El-Jones can establish cause and prejudice to excuse the default.

In his Traverse, El-Jones appears to argue that the procedural default should be excused due to the ineffective assistance of trial counsel.  (ECF No. 9 at 15-16.)  He contends that appellate counsel could not raise the Bland and Lee coercion claim on direct appeal because trial counsel failed to call Destanie Scurry as a defense witness at trial.[4]  *Id.*  He further claims that Scurry's testimony would have corroborated Bland and Lee's accounts of prosecutorial misconduct.  Scurry would have testified, he maintains, consistent with her post-conviction affidavit   that she overheard the prosecutor remark to Lee's mother and aunt that if Lee did not testify the way the State wanted her to, she would "fac[e] ten years because [the prosecution] believe[d] that she is the one that [took] the gun away from the scene."  (ECF No. 9 at 15-16, *quoting* ECF No. 9-1 at 33.)  Presumably, El-Jones believes that if Scurry had testified about the prosecutor's threats against Lee, his prosecutorial-misconduct claims relating to Bland and Lee would have been stronger, and thus, appellate counsel would have raised the claim on direct appeal. *Id.*

---

[4]  According to Destanie Scurry's affidavit, she overheard a conversation between the prosecutor and Jazmine Lee's mother and aunt.  (ECF No. 8-1 at 33.)

-13-

El-Jones's argument regarding Scurry's testimony is no more than speculation. Furthermore, as stated above, "cause" requires a showing that an objective factor *external* to the defense impeded counsel's efforts to comply with the state procedural rule. El-Jones has not stated that he or his appellate counsel were unaware of the prosecutorial misconduct claims revolving around Lee and Bland. As such, El-Jones has failed to demonstrate than an external factor prevented the argument from being raised. Although Scurry's affidavit may have bolstered such an argument, the absence of her testimony from the trial court record did not prevent or hinder appellate counsel from raising the prosecutorial misconduct argument as it related to Lee and Bland. In other words, it is simply not reasonable to suggest that trial counsel's failure to call Scurry as a trial witness somehow impeded appellate counsel from making a prosecutorial misconduct argument with respect to Lee and Bland, who did testify. Therefore, absent a showing of cause, the claims remain defaulted.

## IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

-14-

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).   Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews*, 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S.   , 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court

-15-

must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786  87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A.  Ground One: Ineffective Assistance of Trial Counsel**

In his first ground for relief, El-Jones contends his trial counsel provided ineffective assistance in failing to mount an alibi defense, including interviewing and presenting several alibi

-16-

witnesses.  He argues he was attending a family reunion when the shooting occurred, and several

family members were able and willing to testify to that fact.  Furthermore, he alleges a video

camera at the scene of the reunion may have produced evidence of El-Jones' presence there.

(ECF No. 9 at 3, 10-13.)  Respondent argues that trial counsel had no obligation to call or even

interview witnesses whose testimony would not have exculpated El-Jones.  (ECF No. 4 at 31.)

Specifically, Respondent asserts that the testimony of the so-called alibi witnesses would not

have significantly bolstered the defense due to the suspect motives of the affiants, who are all

related to El-Jones.  *Id*. at 34.

The Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock

principle in our justice system."  *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012).  To establish

ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so

below acceptable standards of representation that counsel was not functioning as "counsel"

guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v.*

*Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  In

addition, a petitioner also must demonstrate that a trial counsel's performance prejudiced the

petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*. at 1030.

With respect to the first prong, "[c]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or

strategies employed by counsel are not enough to support a claim of ineffective assistance of

counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a

matter of strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington v. Richter,* 131 S. Ct. 770, 788 (U.S. 2011); *accord Kennedy v. Warren*, 2011 WL 1642194, *2 (6th Cir. May 3, 2011); *accord Goza v. Welch*, 2012 U.S. Dist. LEXIS 178665 at **24-25 (N.D. Ohio Dec. 18, 2012).  A reviewing court must "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Turning to the prejudice requirement, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).  "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693 (citation and quotation marks omitted).  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

-18-

The Supreme Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential"; applying both standards together results in review that is "doubly" deferential.  *Harrington*, 131 S. Ct. at 788.  Because ineffective-assistance-of-counsel claims are mixed questions of law and fact, *id.* at 698, a habeas court reviews such claims under AEDPA's "unreasonable application" prong, § 2254(d)(1), *see, e.g.*, *Mitchell v. Mason*, 325 F.3d 732, 737  38 (6th Cir. 2003).

El-Jones raised the substance of ground one in his post-conviction petition to the state trial and appellate courts.  *El-Jones*, 2013 WL 3964346, at **2-3.  (ECF No. 4-26.)  The last state court to consider the merits of El-Jones' ineffective-assistance claim was the state appellate court.  It reasoned:

> {¶ 6} El Jones raised two grounds for relief in his petition[, including] that trial counsel was ineffective in failing to present an alibi defense . . .  With his petition, El Jones filed the affidavits of family members who claim to have seen him at a family reunion on the date of the shooting . . . .

> {¶ 7} The trial court found that El Jones was represented by the attorney of his choice, who replaced appointed counsel on the day that trial was scheduled to start and who filed "over twenty separate motions" after the continued trial date. The trial court also noted that El Jones was permitted to address the court directly "on a number of occasions," but neither El Jones nor his attorney raised the issue of an alibi defense despite ample opportunity to do so. . . .  This Court has thoroughly reviewed the record, and the trial court's findings are supported by competent and credible evidence.

> {¶ 8} Turning to the second aspect of our analysis, we consider both of El Jones' grounds for relief to determine whether the trial court abused its discretion by dismissing the petition without a hearing. In other words, if "the petition, supporting affidavits, documentary evidence, files, and records do not demonstrate sufficient operative facts to establish substantive grounds for relief, then the trial court properly exercised its discretion in dismissing the petition without a hearing." . . .

{¶ 9} When determining whether a petition and accompanying affidavits demonstrate sufficient operative facts to establish substantive grounds for relief, the trial court "should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." . . .  The trial court must consider "all relevant factors" with respect to the affidavits, including, but not limited to:

(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

{¶ 10} In this case, the trial court noted that it "was fully involved in this case from the outset," presiding over all of the proceedings from trial through disposition of the petition for postconviction relief. With respect to the affidavits in support of El Jones' ineffective assistance claim, the trial court observed that El Jones had numerous opportunities to raise an alibi defense, but did not. The trial court explained that the affidavit evidence "is suspect and not compelling." The affidavits submitted by El Jones consist of a form document with blanks filled in by the affiants, all of whom are members of El Jones' family. . . .  Having reviewed the trial court record and the evidence in support of El Jones' petition, we conclude that the trial court did not abuse its discretion with respect to El Jones' first ground for relief.

*El-Jones*, 2013 WL 3964346, at **2-3 (internal citations omitted).

Here, the state appellate court reasonably concluded that El-Jones' counsel did not provide constitutionally ineffective assistance.  As the state court first observed,  El-Jones was permitted to address the trial court directly on numerous occasions, but neither he nor his attorney raised the issue of an alibi defense.  Even now, El-Jones has presented no evidence aside from his mother's affidavit (ECF No. 9-1 at 10-11)    that anyone, including El-Jones

-20-

himself, ever informed counsel of the alibi witnesses.[5]  *See Higgins v. Renico*, 470 F.3d 624, 632 (6th Cir. 2006) ("In essence, a defendant has the burden of proving, by a preponderance of the evidence, that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." (citation and internal quotation marks omitted)).  *See also Carter v. Mitchell*, 443 F.3d 517, 531 (6th Cir. 2006) ("[C]uriously absent from the record is any statement from trial counsel describing what he did or did not do . . . ."); *Woodard v. Mitchell*, 410 Fed. Appx. 869, 875 (6th Cir. 2010) (Although not required, it is "obvious ... that [trial counsel's] testimony, when available, is preferred.").  Here, there is little evidence that counsel was ever apprised of the possibility that alibi witnesses existed other than the self-serving affidavit of El-Jones's mother.

Moreover, even if the Court presumes counsel was aware of the so-called alibi witnesses, his presentation of a different defense is presumed to have been the product of an informed strategic decision.  *See Pinholster,* 131 S. Ct. at 1404 (instructing habeas courts reviewing ineffective-assistance claims to "begin with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy'" (quoting *Strickland,* 466 U.S. at 689)).  Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland,* 466 U.S. at 690.  The Court finds nothing unreasonable about the state appellate court's determination that El-Jones's affidavit evidence was "suspect and not compelling."

---

[5]  El-Jones' mother and another affiant, Lisa Brown, also claimed they told the detectives that El-Jones was at the family reunion at the time of the shooting.  (ECF No. 8-1 at 10-11, 15-16.)

Respondent correctly identifies several weaknesses in the affidavits: (1) the affiants lacked credibility due to their family ties to El-Jones; (2) the proffered alibi defense would have been cumulative to the "principle" defense presented at trial, namely, that El-Jones was not present at the site of the shooting; (3) the affiants' proposed testimony was unpersuasive, as their accounts were inconsistent in pinpointing when El-Jones arrived at the reunion, leaving open the possibility that El-Jones could have gone to the family reunion and still committed the murder; and, (4) El-Jones did not submit to the post-conviction court any physical evidence, such as photographs, video or receipts, to corroborate the affiants' statements.  (ECF No. 4 at 33-37.) The Court agrees.

Defense counsel argued in his closing that the State's witnesses had created a "ball of confusion;" and, no one conclusively placed El-Jones at the scene of the shooting or saw him with a gun.  (*See, e.g.,* ECF No. 4-10, Tr. 616, 630-31.)  Counsel may reasonably have decided that this defense was stronger than an alibi supported only by the vague and conflicting testimony of biased family members.

Furthermore, El-Jones' proffered alibi is far from airtight.  The time of the shooting was never clearly established, as the testimony at trial was imprecise.  For example, Nerieda Riley, the victim's aunt who was with him when the shooting occurred, testified that she did not know the precise time of the shooting; only that "it was just about to get dusk out."  (ECF No. 4-6, Tr. 81, 107-108.)  The first Akron police officer to arrive at the crime scene, Officer Horak, testified that he arrived "rather quickly" after being dispatched, but did not state an exact time.  (ECF No. 4-6, Tr. 123-124.)  Durrell Bradley, who lived at The Rosemary, where the shooting took place, testified that between "approximately . . . 9:30 and 10:00," she heard screams and went outside

her apartment, where she saw El-Jones trying to get a ride to the hospital.  (ECF No. 4-7, Tr. 211-13.)  Detective Garro testified that "[s]omewhere around 10:00" he received word of the shooting and on cross-examination that the shooting took place "[a]pproximately 10:00 at night."  (ECF Nos. 4-8 & 4-9, Tr. 311, 426.)

El-Jones's proposed alibi testimony was just as vague about when El-Jones arrived at the family reunion.  Of El-Jones' ten proffered witnesses,[6] only two specifically state that they saw him arrive, both stating he got there at "about" or "around" 9:30 p.m.  (ECF No. 9-1 at 15, 21.)  Others remembered first seeing him there "at 9:30 p.m.," "around 9:45," "between 9   9:30," and "around 9:00 9:30."[7]  *Id*. at 10, 12, 24, 27.   Many averred that they never saw him leave the party and that he was there well past midnight.  *Id*. at 13, 18-19, 21-22, 24-25, 27-28.  Four affiants stated that El-Jones was with them at the reunion until they departed.  *Id*. at 19, 21, 24, 31.

---

[6]  Two of the affiants, Destanie Scurry and Jenette Bland, did not discuss El-Jones' presence at the family reunion at all.  (ECF No. 9-1 at 33; ECF No.  4-19 at 3.)

[7]  The affidavit of Janie Sullivan, El-Jones's grandmother, merely states that she saw El-Jones at the reunion, but does not specify when she saw him    only that he still there when she left at 12:30.  (ECF No. 9-1 at 12-14.)  She herself did not arrive until 9;45 p.m.  *Id*.  Though difficult to read, Lisa Brown's affidavit appears to state El-Jones arrived "around (9:30) pm," but also states El-Jones was out in the parking lot. (ECF No. 9-1 at 15-17.)  In the next paragraph, she contradicts herself and states "I didn't see Elohim at all during the party.  I did not see him with a gun."  *Id*.  Thomas Brown stated that El-Jones was present from the time he arrived at the reunion until the time he left, but Brown does not indicate what time he himself arrived.  (ECF No. 9-1 at 18-20.)  Naomi Davis stated that El-Jones arrived with his girlfriend "around (9:30 pm)."  (ECF No. 9-1 at 21-23.)  Luther Womack gave the earliest citing of El-Jones at the reunion, stating he saw him at the reunion "between 9-9:30," but does not state if that is the time he arrived. (ECF No. 9-1 at 24-26.)  The affidavit of Kaprix Travis states the time he arrived, but does not state what time he saw El-Jones arrive.  (ECF No. 9-1 at 27-29.)  El-Jones's mother stated that she saw El-Jones at her home around 8:30 p.m. and then again at the reunion at 9:30 p.m.  (ECF No. 9-1 at 10-11.)

-23-

Even if El-Jones's proposed alibi affidavits are true, El-Jones still could conceivably have perpetrated the crime and made it to the reunion near the time the affiants claim they saw him (closer to 10 p.m.).  Or, as Respondent argues, he could have left the party (closer to 9:30 p.m.), committed the murder, and then returned.  Merely because no one saw him leave the party does not mean he did not.

Due to the uncertainty as to when exactly the shooting occurred and when El-Jones allegedly arrived at the reunion, this Court cannot find that El-Jones has established the requirements of an ineffective assistance of trial counsel claim.  Assuming *arguendo* that defense counsel rendered inadequate assistance by failing to interview or call for trial the "alibi" witnesses, El-Jones has not established that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  The statements of the affiants do not clearly and conclusively preclude El-Jones's presence at the site of the shooting.

Finally, all of the alibi testimony conflicts with the testimony offered at trial.  As such, the likelihood that the affiants' statements would have resulted in a different outcome is lessened by the conflicting testimony of State witnesses.  For one, Durell Bradley, another Rosemary resident, testified that she saw El-Jones right after the murder occurred.  (ECF No. 4-7, Tr. 212-13.) Specifically, she saw him standing next to the car of a woman, holding his stomach, and claiming to have been shot.  *Id*. at Tr. 214.  Bradley testified that she  followed the car El-Jones departed in, thinking that he was headed to the hospital, but instead El-Jones exited by the side of a road. (ECF No. 4-7, at 212-18.)  She asked why they were not going to the hospital, and El-Jones lifted his shirt indicating that he had not been hurt after all.  *Id*. at Tr. 219-20.  Jazmine Lee, one of the affiants and who was pregnant with El-Jones' child at the time of the murder, testified at trial.

-24-

She and a friend dropped El-Jones off at The Rosemary the evening of the crime.  (ECF No. 4-10, Tr. 542-43.)  After an unspecified period of time, El-Jones returned to the car, was acting like he was hurt, and told Lee to leave.  (Tr. 545-47.)  Lee and the friend then went to El-Jones' aunt's apartment on Colonial Hills Drive, where El-Jones' family reunion took place.  (Tr. 547-49.)  El-Jones met them there later that night.  (Tr. 549.)  Lee later recanted her testimony in one of the affidavits El-Jones submitted in postconviction proceedings, and averred that she was with El-Jones the entire night of the crime from 8:30 p.m. on, including before and during the family reunion.  (ECF No. 9-1 at 30-32.)  "Legally, recanting affidavits are always viewed with 'extreme suspicion.'"  *Williams v. Coyle*, 260 F.3d 684, 708 (6th Cir. 2001) (*citing United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991)); *accord Bradley v. Woods*, 2015 U.S. Dist. LEXIS 84520 at *28 (E.D. Mich. June 30, 2015).  Therefore, even if El-Jones was at the family reunion on the evening in question, witnesses clearly also place him at the scene of the shooting the same night.  The possibility that he was both at the shooting and later at the reunion is not precluded by the affidavits.

Given El-Jones's failure to establish the prejudice prong of *Strickland*, the state appellate court's determination    that El-Jones' trial counsel did not provide ineffective assistance by failing to advance El-Jones' proposed alibi defense    was neither contrary to, nor an unreasonable application of clearly established law.

**B.  Ground Two**: **Prosecutorial Misconduct**

El-Jones's second ground for relief is poorly developed.  Therein, El-Jones claims that he was deprived of a fair trial because "witnesses were threatened, coached, and coerced to testify in

-25-

such a way that would benefit the state." (ECF No. 1.)  The petition does not identify by name which witnesses were allegedly threatened, coached or coerced    only that he is referring to "[w]itnesses presented by the State of Ohio."  *Id*.  However, as discussed above, this claim is procedurally defaulted as it relates to State's witnesses Bland and Lee.

In his state court motion for post-conviction relief, El-Jones's argument did aver that Sonya El, his mother, was threatened with criminal charges after giving her statement to the police.[8]  (ECF No. 4-18 at 8.)  Sonya El, however, was *not* a State's witness.  The argument section of El-Jones's Traverse makes no mention of his mother.  (ECF No. 9 at 12-16.)  In the "Statement of Facts" portion of the Traverse, El-Jones does aver that Sonya El told police detectives that her son was with her, told police there were surveillance cameras where the reunion occurred, and that she also shared this information with defense counsel.  (ECF No. 9 at 3.)  El-Jones asserts that Sonya El was "ignored" and "never given an opportunity to testify on her son's behalf."  *Id*.  El-Jones does not explain how the decision not to call his mother as a witness by the either the State or by his own defense counsel resulted in prosecutorial misconduct.  It is not this Court's function to develop an argument on a petitioner's behalf, especially where he is represented by counsel. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods.*

---

[8]  According to her affidavit, Sonya El told police detectives that her son was with her at the time of the murder.  (ECF No. 9 at 3; ECF No. 9-1 at 10-11.)  She further stated that she was threatened with being charged with obstruction of justice for lying.  *Id*.

-26-

*Liab. Litig. v. Abbott Labs.*, No. 04-4175, 447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).  Here, the Court deems this argument waived as it is undeveloped.

Nevertheless, even if one could glean some sort of argument from the Traverse related to Sonja El, to reach a constitutional level violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).  The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate statements warrant a reversal.  *See United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994).  First, a court must determine whether a prosecutor's statements were improper followed by a second determination as to whether the impropriety constitutes reversible error.  *DeJohn*, 368 F.3d at 548.  The following four factors are used to determine whether reversal is necessary: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused."  *Id*., *quoting Carroll*, 26 F.3d at 1385.  Further, prosecutorial misconduct claims are subject to harmless error analysis.  *See Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2006). ("An error is found to be harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'") (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)).

The state appellate court considered the claim, reasoning:

{¶ 11} El Jones' second ground for relief was that he was denied a fair trial as a result of attempts by the State to coerce and threaten three witnesses for the

defense: his mother, Sonya El, (2) his former girlfriend, Jazmine Lee, and (3) Jeanette [*sic*] Bland, a witness whose testimony placed El  Jones near the scene of the murder. Ms. El submitted a single affidavit and, for the same reasons considered in our discussion of Mr. El  Jones' first ground for relief, that affidavit does not set forth sufficient operative facts to establish substantive grounds for relief. . . .

*El-Jones*, 2013 WL 3964346, at *3.

The Supreme Court has observed, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  El-Jones has not shown that the state appellate court's decision rejecting his prosecutorial misconduct claim relating to Sonja El contravened or misapplied any clearly established Supreme Court precedent.  Indeed, El-Jones does not cite to any authority, let alone from the Supreme Court, suggesting that a police officer's threat to charge an individual with obstruction of justice could support a prosecutorial misconduct claim.  El-Jones does not explain how the detective's alleged actions impacted the fairness of his trial.  Rather, El-Jones merely asserts that his mother was "never given an opportunity to testify on [his] behalf."  (ECF No. 9 at 3.)  Such a claim, however, merely reiterates the claim in ground one that defense counsel failed to call Sonya El and others as alibi witnesses.  The decisions of defense counsel cannot form the basis of a prosecutorial misconduct claim.  Nor does Sonja El assert that she was ready and willing to testify on her son's behalf, but did not because of the detective's warnings that false statements would lead to charges against her.

As such, El-Jones claim of prosecutorial misconduct is meritless.

## V.  Conclusion

For the foregoing reasons, it is recommended that El-Jones' Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: February 9, 2016

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-29-